IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION

```
TRACEY McCALL, as              )
administratrix of the          )
estate of Jonathan McCall,     )
                               )
     Plaintiff,                )
                               )    CIVIL ACTION NO.
     v.                        )     1:11cv559-MHT
                               )         (WO)
KEITH REED, et al.,            )
                               )
     Defendants.               )
```

OPINION

As the administratrix of the estate of decedent Jonathan McCall, the plaintiff brought this lawsuit against defendants Houston County Jail Administrator Keith Reed, Corrections Deputy James West, and Licensed Practical Nurse Ashley Kennedy. The plaintiff asserted both a federal claim pursuant to 42 U.S.C. § 1983 (that the defendants' deliberate indifference to decedent McCall's serious medical needs caused his death in the Houston County Jail, in violation of the United States Constitution) and a state wrongful-death claim.

Subject-matter jurisdiction was proper under 28 U.S.C. §§ 1331 (federal question), 1343(a)(3) (civil rights), and 1367 (supplemental).  After the parties settled, a judgment was entered dismissing and closing the case.

The parties now ask the court to set aside that judgment pursuant to Federal Rule of Civil Procedure 60(b), add decedent McCall's minor beneficiary as a party, and, after conducting a pro ami hearing to determine whether the settlement is in the best interests of the minor, find that the settlement is fair, just, reasonable and warrants the court's approval.  For the reasons that follow, the court consents to all of these requests.

## I. BACKGROUND

This case arises out of Jonathan McCall's death in the Houston County Jail.  McCall's estate claimed that he died because of the deliberate indifference of personnel at the Houston County Jail.  The plaintiff

administratrix alleges that a nurse responsible for medical care refused to provide treatment to the decedent McCall as his conditioned worsened, stating that he had a mental illness and "insanity never killed anyone" or, at the least, "I'm not messing with him. He's crazy. There's no cure for crazy." McCall v. Houston Cnty., 2014 WL 3045552, at *2 (M.D. Ala. 2014) (Thompson, J.). The plaintiff administratrix also alleges that the jail improperly switched McCall's medicine several days before he died and that, on the day he died, he received no medical attention even though he "was lying in his urine, unresponsive, and moaning." Id. at *3.

As relevant here, after the court granted in part and denied in part the defendants' motion for summary judgment, McCall v. Houston Cnty., 2014 WL 3045552, at *19, the parties reached a settlement in August 2014, and, in September of that year, the court entered a judgment dismissing this case. While the plaintiff has

3

brought this lawsuit as the administratrix of the estate of decedent McCall, the beneficiary of that settlement is actually McCall's child, who is a minor and was not a party to this litigation.

The parties settled for $ 500,000. This was the full amount of the insurance policy for the defendants. Out of this settlement, the plaintiff's counsel received $ 250,000 in attorney's fees and $ 41,633.87 in costs. The estate was left with $ 208,366.12.

Following the settlement, the parties intended to ask the Houston County Probate Court to conduct a pro ami, or fairness, hearing to ensure the minor was protected in the settlement. They housed the settlement proceeds in the probate court, and the probate court appointed a guardian ad litem for the minor. However, in October 2014, the Alabama Supreme Court ruled that probate courts do not have jurisdiction in the distribution of settlements from wrongful-death cases. <u>Kirksey v. Johnson</u>, --- So.

3d ----, 2014 WL 5311315, at *10 (Ala. 2014). Closed off from the probate court, the plaintiff, joined by defendants, asked this federal court to set aside the earlier dismissal and conduct a pro ami hearing.

As detailed in the court's prior opinion, McCall v. Reed, 2015 WL 3397831, at *1 (M.D. Ala. 2015) (Thompson, J.), there was a significant question whether the court could set aside the final judgment under Rule 60(b) in order to conduct a pro ami hearing, given that the minor was not a party to the litigation. To address this antecedent procedural question of whether the court should set aside the motion as well as the later substantive question of whether the settlement was fair to the minor, the court appointed a guardian ad litem for decedent McCall's minor beneficiary. Id. at *4. The defendants agreed to pay the guardian's fees.

The court held a subsequent hearing on this issue and, in case the court set aside the judgment, on

5

whether the settlement was fair, just, and reasonable. During this hearing, the guardian stated that, after a review of the case and speaking with plaintiff and defense counsel, the circumstances of this case merit granting the motion to set aside the final judgment and joining the minor as a party.  All parties and the guardian stated that the settlement was fair, just, and reasonable and in the best interest of the minor.

## II. THE RULE 60(b) MOTION AND JOINDER OF THE MINOR AS A PARTY

### A. Legal Standards

Federal Rule of Civil Procedure 60(b) is a procedural vehicle for obtaining relief from a final judgment.  The rule lists five defined circumstances for obtaining relief and then, as relevant to this case, provides a catch-all provision.  Fed. R. Civ. P. 60(b).  This catch-all, subpart (6) of Rule 60(b), allows the relief from final judgment in a federal case for "any other reason [in addition to the five listed]

6

that justifies relief."  "While the movant must demonstrate that 'the circumstances are sufficiently extraordinary to warrant relief, Toole v. Baxter Healthcare Corp., 235 F.3d 1307, 1317 (11th Cir. 2000), this catch-all provision creates a 'grand reservoir of equitable power to do justice in a particular case.' Nisson v. Lundy, 975 F.2d 802, 806 (11th Cir. 1992)." Daniel v. Gen. Motors Acceptance Corp., 2008 WL 3876764, at *2 (M.D. Ala. 2008) (Thompson, J.).  A motion under this provision "must be made within a reasonable time."  Fed. R. Civ. P. 60(c)(1).

Under Federal Rule of Civil Procedure 20 governing permissive joinder,

> "Persons may join in one action as plaintiffs if: (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action."

"The purpose of the rule is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." Charles Wright, Arthur Miller, et al., 7 Fed. Prac. & Proc. Civ. § 1652 (3d ed.).

## B. Discussion

In this case, the question whether the court should use its equitable power to provide relief from the judgment is intertwined with whether the minor beneficiary can be joined as a party.

If the minor has a proper cause of action in this case, she could, without a pro ami hearing, disaffirm the settlement. McCall v. Reed, 2015 WL 3397831, at *2. However, if the minor does not have an interest in the settlement--and could not be joined as a party--there would be no reason for a pro ami hearing because the minor would have no legal interest in the case. The court will grant relief from final judgment

in this case only if the reason for granting that relief, the pro ami hearing, would have any effect; if not, there would be little reason to use the court's equitable powers.

As discussed at length in the prior opinion, it is unclear whether a minor is a proper party in an action alleging deliberate indifference under federal constitutional law as well as wrongful death under Alabama law.  McCall v. Reed, 2015 WL 3397831, at *2. It is particularly complicated because the rationale for minors not being parties to wrongful-death cases in Alabama is that a party may recovery only punitive damages in these cases based on a deterrence theory rather than compensatory damages for the family, but the Eleventh Circuit Court of Appeals has found that actions brought under 42 U.S.C. § 1983 must allow for compensatory damages.  Id. (citing Gilmere v. City of Atlanta, Ga., 864 F.2d 734, 740 n.7 (11th Cir. 1989)). In other words, binding circuit law undercuts the logic

for excluding minors as parties in cases that allege constitutional torts as well as state-law wrongful-death claims. Consistent with this understanding, the court finds that there is a colorable contention that the minor beneficiary has a right to relief jointly with the administratrix and that the questions of fact about McCall's death and the questions of law about whether the defendants are liable are common to both the estate and the minor. See Fed. R. Civ. P. 20. The minor is a proper party who can be 'permissively joined.'

The next issue is whether, even if the minor is a proper party, the parties and the minor would want relief from the judgment in order to join the minor and conduct a pro ami hearing. As noted in the prior opinion, "[t]he parties ... have a direct interest in having the current judgment (which, according to them, is not binding on the minor) set aside so that the court can, after a pro ami hearing, enter a new

10

judgment (which, according to them, would be binding on the minor)." McCall v. Reed, 2015 WL 3397831, at *3. Indeed, "[f]rom the parties' perspective, it appears clear that it is to their advantage for the court to set aside the dismissal judgment and hold a pro ami hearing." Id. The question that remained was whether the minor beneficiary shared that interest, id., and the guardian ad litem has since agreed that the judgment should be set aside.

The court agrees with the parties and the guardian ad litem. When the minor is the sole beneficiary of a settlement, she should be protected through a pro ami hearing. Moreover, because settlement agreements are not binding on minors without a pro ami hearing, leaving the current judgment in place would risk the minor challenging the settlement when she reaches the age of majority. See id. at *2 (noting that minor can disaffirm a contract). Running that risk would hurt the minor as well as the parties. Parties would be

reluctant to reach settlements if they could be disaffirmed five to ten years later, meaning that litigation could drag on and the minor may not receive needed funds quickly after a parent dies. More specifically here, "it may be that, for a minor who has yet to receive the benefits of the settlement, the status quo would not be in the minor's best interest, for it could lead to further ligation (including an effort by the defendants to have the judgment set aside as unfair and then to litigate this case on merits) that could put the settlement, and, in particular, the minor's benefits from it, in serious jeopardy, including entanglement in long-term litigation." McCall v. Reed, 2015 WL 3397831, at *4.

Moreover, given the uncertainty of whether the minor has a legal claim at all in this case, the minor has an interest in ensuring some protection now by the court now conducting a pro ami hearing rather than

12

risking having no protection later if a court denies the minor's attempt to disaffirm the settlement.

In sum, there is good cause to set aside the judgment, join the minor beneficiary to the case, and address the fairness of the settlement.

### III. APPROVAL OF SETTLEMENT

Having reviewed the pleadings in this case and heard a detailed explanation of the settlement, the court finds that all the terms and provisions of the proposed settlement are in the best interests of the minor child and are fair, just, and reasonable under the circumstances involved in this case. It reaches this conclusion for several reasons.

First, the decision to settle was logical. This case involved complicated issues that would have uncertain results at trial. It was a prison-litigation case where there were no witnesses to McCall's death except those accused of wrongdoing. The plaintiff

13

would have to overcome these hostile witnesses as well as federal and state immunity at trial to prevail. On the other hand, the defendant nurse responsible for the decedent McCall's care, was reported by another corrections officer to have said that she "can't cure crazy," in explaining why she did not provide him treatment. Additionally, no one from the jail medical staff acted while he was dying on the ground in a pool of his urine. Bad facts and uncertain law for both sides led to settlement.

Second, the settlement amount was reasonable. The plaintiff received the highest amount that the defendants' insurance policy would pay, and none of the defendants had enough personal assets to supplement this total. As the insurance policy has already paid out, there also will not be any complications with collection of a judgment.

Third, although a 50 % contingency fee is on the high end, it is reasonable in this case. See Sweeney

v. Athens Reg's Med. Ctr., 917 F.2d 1560, 1569 (11th Cir. 1990) (approving 50 % contingency fee over the objection of at least one expert given the difficulty of a case); Large v. Hayes by and through Nesbitt, 534 So. 2d 1101, 1106 (Ala. 1988) (noting that a 50 % contingency fee has been upheld as a matter of law). To decide whether attorney's fees are reasonable, the court is required to determine the "lodestar" figure or "the product of the number of hours reasonably expended to prosecute the lawsuit and the reasonable hourly rate for work performed by similarly situated attorneys in the community." Simpleville Music v. Mizell, 511 F.Supp.2d 1158, 1161 (M.D. Ala. 2007) (Thompson, J.) (citing Norman v. Housing Auth. of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988)). The fee applicant bears the burden of "establishing entitlement and documenting the appropriate hours and hourly rates." Id. at 1162 (quoting Norman, 836 F.2d at 1303). In determining the lodestar, the court applies the 12-factor test set

15

forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974) (abrogated on other grounds, see Blanchard v. Bergeron, 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989))[1] and then proceeds to analyze "whether any portion of this fee should be adjusted upwards or downwards." Simpleville Music, 511 F. Supp. 2d at 1161 (citing Johnson, 488 F.2d at 717-19)[2]; see also Developers Sur. & Indem. Co. v. Old

---

1. In Bonner v. Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

2. These 12 Johnson factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the (continued...)

Towne Station, LLC, 2010 WL 3258617, at *1 (M.D. Ala. 2010) (Thompson, J.).

The lodestar figure for the plaintiff's counsel is well above the $ 250,000 they will receive. They calculated it as follows:

| Attorney | Hours | Rate (hourly) | Total Fees |
|---|---|---|---|
| Samuel Fisher | 402.3 | $ 550 | $ 221,265 |
| C. Neville Reese | 269.0 | $ 350 | $ 94,150 |
| Sidney Jackson | 319.6 | $ 225 | $ 71,910 |
| Toni Braxton | 124.9 | $ 300 | $ 37,340 |
| Total | | | $ 424,795 |

Neither the defense counsel nor the guardian ad litem objects to this lodestar figure. Even if the hourly figures were high, the total lodestar is almost twice what the plaintiff's counsel will be paid. In addition to the lodestar being much higher than the attorney's fees, other factors weigh towards approving these contingency fees. As discussed above, this is a

---

client; and (12) awards in similar cases. Johnson, 488 F.2d at 717-19.

high risk case: constitutional torts cases under 42 U.S.C. § 1983 are difficult to prove in general and prison-litigation cases often more so given the lack of witnesses. Without higher contingency fees, lawyers may not even take meritorious cases. Indeed, the plaintiff submitted an affidavit noting how she was told it would be nearly impossible to find a lawyer and how another lawyer from a national plaintiff-side law firm investigated and then turned down the case due to the risk. Additionally, all parties and the guardian ad litem agree that this is a fair amount and in the interest of the minor.

Last, the court finds the conservatorship model that the guardian ad litem described on the record to be in the best interest of the minor. The minor will be able to petition to access the funds, but the funds will be kept by a fiduciary until the minor reaches the age of majority.

In sum, the settlement is fair, just, and reasonable and in the best interest of the minor.

Appropriate orders will be entered.

DONE, this the 2nd day of July, 2015.

                                    /s/ Myron H. Thompson
                                **UNITED STATES DISTRICT JUDGE**